UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SHARI Y., | Case No. 2:22-cv-01656-BNW |
| Plaintiff, | |
| v. | **ORDER** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Presently before the Court is Plaintiff's Motion for Reversal and Remand. (ECF No. 23). Defendant filed a response in opposition (ECF No. 28) and a Countermotion to Affirm the Agency Decision (ECF No. 27). Plaintiff then filed a Reply in support of her motion (ECF No. 29). For the reasons stated below, the Court affirms the Commissioner's final decision.

**I.    Background**

On April 18, 2019, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging an onset date of September 12, 2017. ECF No. 19-1[1] at 228. Plaintiff's claim was denied initially and on reconsideration. *Id*. at 117 and 125. A telephonic hearing was held before Administrative Law Judge ("ALJ") Cynthia R. Hoover on February 1, 2021. *Id*. at 94-116. On July 20, 2021, ALJ Hoover issued a decision finding that Plaintiff was not disabled. *Id.* at 23-32.  On August 1, 2022, the Appeals Council denied review. *Id*. at 8. On September 30, 2022, Plaintiff commenced this action for judicial review under 42 U.S.C. § 405(g). *See* Compl. (ECF No. 6).

///

///

///

---

[1] ECF No. 19 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 19)). All citations to the Administrative Record will use the CM/ECF page numbers.

## II. Discussion

### A. Standard of Review

Administrative decisions in Social Security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence supports more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue

before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### B. Disability Evaluation Process and the ALJ Decision

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Moreover, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

1   Step two addresses whether the individual has a medically determinable impairment that
2   is severe or a combination of impairments that significantly limits her from performing basic
3   work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically
4   determinable impairment or combination of impairments, then a finding of not disabled is made.
5   If the individual has a severe medically determinable impairment or combination of impairments,
6   then the analysis proceeds to step three.

7   Step three requires the ALJ to determine whether the individual's impairments or
8   combination of impairments meets or medically equals the criteria of an impairment listed in 20
9   C.F.R. Part 404, Subpart P, Appendix 1. *Id*. § 404.1520(a)(4)(iii). If the individual's impairment
10  or combination of impairments meets or equals the criteria of a listing and the duration
11  requirement, then a finding of disabled is made. *Id*. § 404.1520(d). Otherwise, the analysis
12  proceeds to step four.

13  However, before moving to step four, the ALJ must first determine the individual's
14  residual functional capacity ("RFC"), which is a function-by-function assessment of the
15  individual's ability to do physical and mental work-related activities on a sustained basis despite
16  limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this
17  finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to
18  which the symptoms can reasonably be accepted as consistent with the objective medical
19  evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the
20  intensity, persistence, or functionally limiting effects of pain or other symptoms are not
21  substantiated by objective medical evidence, the ALJ must make a finding on the credibility of
22  the individual's statements based on a consideration of the entire case record.

23  Step four requires the ALJ to determine whether the individual has the RFC to perform
24  her past relevant work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed
25  either as the individual actually performed it or as it is generally performed in the national
26  economy within the last 15 years. In addition, the work must have lasted long enough for the
27  individual to learn the job and performed an SGA. If the individual has the RFC to perform her
28

past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). ECF No. 19-1 at 26-32.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2016, the application date. *Id*. at 26.

At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 27.

The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally stoop, kneel, crouch, and crawl; she can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds; she must avoid concentrated exposure to pulmonary irritants and hazards such as dangerous moving machinery like chainsaws and jackhammers, as well as unprotected heights; and she can occasionally reach overhead with her left, non-dominant upper extremity. *Id*.

At step four, the ALJ determined that Plaintiff could perform past relevant work as a secretary. *Id*. at 29.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found the claimant is capable of making a successful adjustment to other work that exists in

significant numbers in the national economy. *Id*. at 38-39. Specifically, the ALJ found that Plaintiff can work as a fast food worker, cashier, or office clerk. *Id*. at 38. The ALJ then concluded that Plaintiff was not under a disability at any time since November 30, 2016. *Id*. at 32.

**III. Analysis**

**A. Whether the ALJ failed to properly evaluate the opinion evidence of Dr. Otaka and Dr. Owen for supportability and consistency.**

When evaluating medical opinions, the ALJ is required to articulate findings regarding only supportability and consistency with the evidence. 20 C.F.R. § 416.920c(b)(2) (identifying two most important factors, supportability, and consistency), (c) (enumerating all factors); *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* (citing § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting § 404.1520c(c)(2)).

**1. Dr. Otaka's Opinion**

In November 2019, Dr. Otaka filled out a checkbox form provided by Plaintiff's administrative level counsel entitled "Treating Source Statement – Physical Conditions," giving an opinion on Plaintiff's physical abilities. ECF 19-1 at 610-13. Dr. Otaka indicated that he primarily based his opinion on imaging of Plaintiff's spine. *Id.* at 450-54, 516-17, 521, 611-13. Dr. Otaka checked boxes opining that Plaintiff would:

- be off task more than 25 percent of a typical workday;
- be able to maintain attention and concentration for less than 30 minutes before requiring a break due to symptoms;
- be absent from work four or more days per month;
- lift and carry a maximum of 20 pounds rarely;
- be able to sit for a maximum of three hours and stand/walk for less than one hour in an eight-hour workday, and require options to sit/stand at will;
- have to lie down more than 10 to 12 times a day for 15 to 30 minutes at a time;

- require the use of a cane or other assistive device to ambulate effectively if she had to stand for more than 30 minutes or walk any distance for 30 minutes;
- walk a maximum of 25 to 50 yards without a cane;
- occasionally reach;
- frequently handle, finger, and feel;
- rarely push/pull with either hand;
- occasionally use foot controls with either foot;
- rarely climb ramps and stairs, balance, stoop, and rotate the head and neck;
- never climb ladders and scaffolds, kneel, crouch, or crawl;
- rarely operate a vehicle;
- not be able to be exposed to humidity and wetness,
- never be able to be exposed to unprotected heights, moving mechanical parts, dust/odors/fumes/pulmonary irritants, extreme cold, extreme heat, and vibrations.

*Id.* at 610-13.

The ALJ found that this opinion was unpersuasive because the limitations "in walking and time off-task" noted by Dr. Otaka were "not consistent with the overall record[.]" *Id.* at 29. Plaintiff argues that the ALJ failed to adequately articulate how she considered the consistency factor of Dr. Otaka's opinion.[2] *See* ECF No. 23, Plaintiff's Motion for Reversal, p. 14, l. 1-4. Plaintiff asserts that the ALJ failed to explain how the evidence supports her conclusion that the opinion was inconsistent with the overall record. *Id.* at 14.

However, the ALJ did explain her conclusion that the limitations noted were not consistent with the overall record. First, she prefaced this sentence with "[a]gain" referring back to her discussion of how "claimant's statements concerning the intensity, persistence and limiting effects" of Plaintiff's symptoms were not consistent with the medical evidence in the record. ECF 19-1 at 28. The ALJ did not violate her duty to clearly explain her finding that Dr. Otaka's

---

[2] Because Defendant agrees with Plaintiff that Dr. Otaka's opinion was supported by his explanations regarding Plaintiff's spine condition, it is not necessary for the Court to delve into the ALJ's determination that Dr. Otaka's opinion was supported.

opinion was inconsistent with the evidence in the record by failing to repeat her earlier discussion of the medical evidence. Further, the Court is required to look at the ALJ's full explanation of her reasoning. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (finding that a reviewing court clearly errs if it fails to look "to all pages of the ALJ's decision").

Considering the ALJ's entire decision, substantial evidence supports her determination that Dr. Otaka's opinion was not consistent with the overall record. The ALJ noted that an MRI of Plaintiff's cervical spine from September 2017 showed that Plaintiff had a discogenic osteophyte with associated disc bulge at C5-6, but that disc bulge caused only "[m]ild central canal stenosis" and "[m]ild narrowing at the origin of the left neural foramen." ECF No. 19-1 at 28, 457- 58. An MRI of Plaintiff's lumbar spine in September 2017 showed only a "[m]ild diffuse disc bulge" at L5-S1 with "[n]o compression upon the exiting nerve root, "[n]o compression upon the cauda equina," "[n]o significant central canal stenosis, and "[n]o significant left neural foraminal narrowing" *Id.* at 28, 452-53. X-rays of Plaintiff's lumbosacral spine in May 2020 showed "[m]ild degenerative disc disease of the lumbar spine" *Id.* at 28, 847. X-rays of Plaintiff's cervical spine in September 2020 showed "[m]ild osteoarthritis" but "no foraminal stenosis," "[n]o compression fracture deformity," "[n]o spondylolisthesis," and "preserved" disc spaces. *Id.* at 28, 861.

The ALJ reasonably found that this imaging, showing only "mild" degeneration of the cervical and lumbar spine in both 2017 and 2020, was not consistent with the extensive limitations in Dr. Otaka's opinion. *Id.* at 29. *See*, *e.g.*, *Pruitt v. Comm'r*, 612 F. App'x 891, 893-94 (9th Cir. 2015) (unpublished) (noting that evidence of "a 2005 X-ray that showed only mild degenerative changes and no acute abnormalities" contradicted the claimant's allegations of sitting limitations); *Kelsey v. Astrue*, 375 F. App'x 788, 789 (9th Cir. 2010) (unpublished) (finding that the ALJ reasonably discounted the claimant's allegations of neck and shoulder pain because "objective testing revealed only mild degenerative change in her cervical spine"); *Burch* 400 F.3d at 681 (ALJ properly discounted the claimant's allegations of severe low back pain because "the MRI and x-rays show only mild degenerative disc disease at L5-S1").

The ALJ also noted that Plaintiff's physical examinations showed few abnormalities, which contradicted Dr. Otaka's opinion. *Id.* at 28, 29. For instance, a physical examination in August 2017 found that Plaintiff exhibited no muscle pain or weakness, normal range of motion throughout her musculoskeletal system, and intact motor function *Id.* at 28, 478. Contrary to Dr. Otaka's opinion regarding limitations stemming from a cervical spine impairment, a physical examination in February 2018 showed that Plaintiff exhibited normal motion of the neck. *Id.* at 28, 482-83. In February 2020, March 2020, June 2020, and May 2021, Plaintiff exhibited no acute distress, full range of motion of the neck, normal motor strength in the upper and lower extremities, and intact sensation. *Id.* at 28, 629, 631, 635, 636, 939.

The ALJ also reasonably found that Dr. Otaka's opinion was not consistent with Plaintiff's types of treatment and response to prescribed treatment. *Id.* at 29. From Plaintiff's alleged onset date until November 2019--when Dr. Otaka gave his opinion--Plaintiff's physicians only recommended stretching exercises and self-massage to treat her spine condition *Id.* at 437, 490. Thus, Plaintiff's treatment record significantly contradicts Dr. Otaka's suggested limitations during the period Dr. Otaka treated Plaintiff.

In October 2020, Plaintiff's treating physician recommended physical therapy to treat pain involving Plaintiff's neck and shoulder. *Id.* at 28, 720, 742. Plaintiff then attended physical therapy in October and November 2020. *Id.* at 871-72, 920-31. Plaintiff's physical therapist noted that the physical therapy primarily concerned Plaintiff's shoulder pain rather than any impairment involving Plaintiff's spine. *Id.* at 871. Thus, the record shows no significant treatment for the lumbar and cervical spine conditions that Dr. Otaka noted were the main source of the limitations in his opinion. *Id.* at 611-13. Plaintiff's medical record shows no evidence of this shoulder pain before October 2020 or after November 2020. *Id.* at 482-83, 485, 629, 631, 635, 646, 719-22, 894-95, 903-904, 937, 939, 941. At Plaintiff's February 2021 administrative hearing, she noted that she treated her pain with THC gummies but did not take any pain medication. *Id.* at 103.

In sum, the ALJ reasonably found that Dr. Otaka's opinion was not persuasive. *Id.* at 29. Dr. Otaka supported his opinion with explanations regarding Plaintiff's spine condition, but his treatment notes do not show that he treated Plaintiff's spine condition during the relevant period

of her claim. *Id.* at 450-54, 516-17, 521, 611-13. Additionally, the remainder of the record shows that Plaintiff only exhibited mild degenerative disc disease upon imaging, maintained strength and range of motion upon examination, and had not received significant treatment for her spine condition since her alleged onset date. *Id.* at 457-60, 629, 631, 635, 646, 847, 861, 871-92, 920-30, 939). Substantial evidence supports the ALJ's assessment of Dr. Otaka's opinion.

### 2. Dr. Owen's Opinion

In May and November 2020, Dr. Owen opined that Plaintiff:

- Required a cane for walking;
- Exhibited lumbar tenderness;
- Had a positive straight leg test;
- Exhibited 2/5 muscular weakness throughout;
- Would be off-task 25% of the time due to pain;
- Would be absent from work four or more days a month;
- Could occasionally lift up to ten pounds;
- Could sit for a total of three hours;
- Stand or walk for one hour.

*Id.* at 708-710, 728-31. The ALJ found that Dr. Owen's opinions were not persuasive because they were "in no way supported by Dr. Owen's treatment notes" and there were "no medical records consistent with such weakness[.]" *Id.* at 29. Plaintiff argues that the ALJ rejected or ignored medical evidence in finding that Dr. Owen's opinions were not supported by or consistent with the record. Particularly, Plaintiff argues (1) that the very medical opinion issued by Dr. Owen in May 2020 contradicts the ALJ's findings and (2) that the ALJ made no mention of Plaintiff's physical therapy. Neither argument calls into question the accuracy of the ALJ's determination that Dr. Owen's opinion was unpersuasive.

First, the ALJ cited to the treatment notes of Dr. Owen in support of his finding that no notes supported Dr. Owen's opinion. *Id.* at 29 (citing to 893-909, 932-52). Dr. Owen's physical examination notes from September 2020, November 2020, January 2021, February 2021, May 2021, and June 2021 state that Plaintiff was not in acute distress, had full range of motion in the

1  neck, had full motor strength in the upper and lower extremities, and had intact sensation *Id.* at
2  895, 904, 908, 937, 939, 943. Dr. Owen noted no ongoing symptoms of Plaintiff's cervical spine
3  impairment. *Id.* at 894-95. Moreover, as the ALJ pointed out, none of Dr. Owen's treatment notes
4  include any mention of the use of a cane. *Id.* at 893-909, 932-52). Thus, the ALJ reasonably
5  found that Dr. Owen's treatment notes, which show largely normal examinations and positive
6  response to conservative treatment "in no way" supported the extensive limitations in his
7  November 2020 opinion.

        Additionally, the ALJ appropriately noted that Dr. Owen's opinion was not consistent with the rest of the medical record. *Id.* at 29. The ALJ correctly found that the remainder of the evidence was not consistent with the muscle weakness or use of a cane shown in Dr. Owen's opinions. *Id.* at 28, 29. A physical examination in August 2017 showed no muscle pain or weakness, normal range of motion, and intact motor function. *Id.* at 28, AR 485. A physical examination in February 2018 also showed normal motion of the neck. *Id.* at 28, citing AR 482-83. No treatment or examination records state that Plaintiff required a cane to ambulate or include any mention of a cane, but Plaintiff reported at the hearing that she purchased a cane on her own. *Id.* at 109.

        Finally, the ALJ did mention that Plaintiff had attended physical therapy. *Id.* at 28. However, even if the ALJ had not mentioned physical therapy, the lack of citation to physical therapy would not have helped Plaintiff's case, because the notes from physical therapy do not support Dr. Owen's assertion that Plaintiff had muscle weakness of 2/5. *Id.* at 28, 921, 924, 925, 927 and 930. Instead, those physical therapy notes show that Plaintiff did have mild muscle weakness in her left shoulder, reporting a score of 4/5. *Id.* In other words, the physical therapy notes contradicted Dr. Owen's assertion that Plaintiff was totally disabled. Thus, the ALJ had substantial evidence for her assertion that Dr. Owen's opinion was not supported by the record or consistent with the medical evidence in the record.

        Since substantial evidence supported the ALJ's conclusion that Dr. Otaka's and Dr. Owen's opinions were unpersuasive, the Court denies Plaintiff's Motion for Remand or Reversal.

///

## IV. Conclusion

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reversal and Remand (ECF No. 23) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Countermotion to Affirm the Agency Decision (ECF No. 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendant and against Plaintiff.

DATED: December 4, 2023.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE